## UNITED STATES DISTRICT COURT17
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:17-cv-23958-UU

BEACH BLITZ CO., a Florida corporation
d/b/a OCEAN 9 LIQUOR, and
d/b/a as OCEAN 11 MARKET,

      Plaintiff,

v.

CITY OF MIAMI BEACH, FLORIDA,
a municipal corporation of the State of Florida,
PHILIP LEVINE, an individual,
JIMMY MORALES, an individual,
MICKEY STEINBERG, an individual,
RICKY ARRIOLA, an individual,
MICHAEL GREICO, an individual,
JOY MALAKOFF, an individual,
KRISTEN ROSEN GONZALEZ, an individual,
JOHN ELIZABETH ALEMAN, an individual,
RAUL J. AGUILA, an individual, and
ALEKSANDR BOKSNER, an individual.

      Defendants.

_____/

## ORDER

      THIS CAUSE is before the Court upon Defendants' Motion to Dismiss pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure (the "Motion"). D.E. 50.

      THE COURT has considered the Motion, the pertinent portions of the record and is

otherwise fully advised in the premises.

## BACKGROUND

      The following allegations are taken from Plaintiff's Complaint. D.E. 1.

      Plaintiff operates two "package stores"—stores which sell packaged liquor—in Miami

Beach, Florida (the "City"). *Id.* ¶ 5. Plaintiff's package stores are located within the City's Mixed

1

Use Entertainment ("MXE") district. *Id.* ¶ 22-23. There are only two other package stores in the MXE district which are not owned and operated by Plaintiff. *Id.* The MXE district contains apartment buildings as well as an array of business establishments including, but not limited to, retail stores, restaurants, and entertainment establishments. *Id.* ¶ 19. The MXE district is also "surrounded by hotels, residences and the beach." *Id.* ¶ 5.

"All business owners operating within the City are required to obtain a Business Tax Receipt (formerly known as an occupational license) (a "BTR")." *Id.* ¶ 33. "A BTR license is essentially a tax on the operation of a business. A BTR is valid from October 1st to September 30th of the following year and must be renewed prior to the commencement of the new fiscal year on October 1, 2017." *Id.* ¶ 33-34. The City "Code" provides penalties for failure to obtain a valid BTR as well as enhanced penalties for multiple violations for operating a business without a valid BTR.[1] *Id.* ¶ 35 (*citing* Section 102.377, Miami Beach City Code). "The Code" also states that the City may prevent a business from operating until the required tax receipt is obtained." *Id.* ¶ 36.

Ocean 9 Liquor ("Ocean 9") is one of the two package stores operated by Plaintiff in the MXE district. *Id.* Plaintiff has operated Ocean 9 since 2011. *Id.* However, Plaintiff failed to timely apply for renewal of Ocean 9's BTR for the 2016-2017 fiscal year. *Id.* ¶ 38. Plaintiff did not discover this oversight until June 2017, approximately eight months after Ocean 9's BTR renewal application was due. *Id.* During that period of delay, the City "commenced a campaign to limit and/or severely curtail the sale of alcohol in the MXE district. *Id.* ¶ 27. In October 2016, "Mayor Philip Levine was quoted by the Miami Herald…calling certain businesses on South Beach that sell liquor "malignant tumors." *Id.* at *2.

---

[1]      The enhanced penalties include incarceration and/or proceedings to enjoin the operation of the business. D.E. 1 ¶ 35 (*citing* Section 102.377, Miami Beach City Code).

"Regulation of the sale of alcoholic beverages is a legitimate legislative province so long as any such ordinance is not arbitrary or capricious and is reasonable in the context of its implementation and effect." *Id.* ¶ 28. According to the City, "the package sale of alcoholic beverages in the MXE district encourage[s] individuals to consume alcoholic beverages" in City parks, streets, and sidewalks. *Id.* ¶ 27. The City thus "determined that the consumption of alcoholic beverages in public places disturbs the quiet enjoyment of the community, causes noise, and contributes to litter, noxious odors, and the general degradation of the City". *Id.* ¶ 29. Consequently, "to serve the health, safety, and welfare of its residents and visitors", on October 19, 2016, the City passed an ordinance[2] prohibiting: (i) package stores in the MXE district; and (ii) package sales of alcoholic beverages within the MXE district (the "October 2016 Ordinance").[3] *Id.* ¶ 46.  The four already-existing package stores, including Ocean 9 and Plaintiff's other MXE district store, were grandfathered in as a matter of law, and therefore, were unaffected by the October 19th Ordinance. *Id.* ¶ 46, n. 8.

The City also passed legislation "substantially reduc[ing] the allowable time periods during which alcohol could be sold in the City" in an effort "to serve the health safety, and welfare of its residents and visitors."[4] *Id.* ¶ 32. "Thus, began the systematic passage of a series of overreaching, unreasonable ordinances designed to bankrupt the four [(4)] package stores by systematically reducing their legal hours of sale."[5] *Id.* Before November 2016, the City Code allowed package stores to sell alcoholic beverages for off-premises consumption between the hours of 9:00 a.m. and 10:00 p.m. *Id.* ¶ 44 (*citing* Section 6-3 City Code). "On November 9,

---

[2]         Ordinance No. 2016-4047.
[3]         The October 19th Ordinance also prohibited entertainment in package stores. D.E. 1 ¶ 46.
[4]         "Chapter 6 of the City Code establishes minimum regulations for the sale and consumption of alcoholic beverages throughout the City, and district-specific alcoholic beverage regulations are set forth in Chapter 142." D.E. 1 ¶ 43.
[5]         Plaintiff asserts that there is no rational nexus between the ordinances and the problem sought to be solved, crime.

3

2016, the Mayor and City Commission passed an ordinance[6] (the "November 2016 Ordinance") prohibiting package liquor sales at retail stores—including, but not limited to package, grocery, and convenience stores, as well as gasoline stations—and alcoholic beverage establishments before 10:00 a.m. each day." *Id.* ¶ 47 (*citing* D.E. 1, Exhibit D). On June 7, 2017, the City enacted a new ordinance[7] (the "June 2017 Ordinance") which changed the hours of package liquor sales in the MXE district" from 10:00 a.m. to 10:00 p.m. However, retail package stores outside the MXE district could sell alcohol from 8:00 a.m. to midnight. *Id.* ¶ 50-52 (*citing* D.E. 1, Exhibit E). Approximately three (3) months later, the City passed a final ordinance[8] (the "September 2017 Ordinance") returning the permissible hours of the sale of alcohol by package stores to the their original time period of 9:00 am. and 10:00 p.m. *Id.* ¶ 54; *See also* D.E. 1, Exhibit F. Defendants considered restricting the hours once again but, as of the filing of the Complaint, no such legislation has been passed. *Id.* ¶ 54.

At 8:39 a.m. on December 21, 2016, a Code Compliance Officer presented Plaintiff with a notice of violation alleging a City Code violation based on Plaintiff's sale of alcoholic beverages between the hours of midnight and 10:00 a.m. (the "December Violation").[9] The December Violation stated that "the City Code provides that retail stores in the MXE district for package sales only may make sales of alcohol for off-premises consumption between the hours of 8:00 a.m. and midnight." *Id.* ¶ 59 (*citing* Exhibit I). However, the violation was issued at 8:39 a.m., which was within the then existing lawful time periods for sale. *Id.* ¶ 61. Plaintiff appealed the December violation, invoking the jurisdiction of the Special Master. *Id.* ¶ 62.

---

[6]    Ordinance No. 2016-4058.
[7]    Ordinance No. 2017-4101.
[8]    Ordinance No. 2017-4131.
[9]    The violation was identified as Case Number 2016-11719. D.E 1 ¶ 58 (*citing* Exhibit H). Plaintiff states that "[s]ubsequently, Plaintiff was provided a different sheet of paper for the December violation" containing a different case number. *Id.* ¶ 59 (*citing* Exhibit I). The Court is unsure of the significance of the previous statement.

At 11:30 p.m. on June 25, 2017, a Code Compliance Officer issued two notices of violation to Ocean 9, including one for failing to obtain a BTR (the "First BTR Violation"). *Id.* ¶ 63 (citing Exhibits J[10] & K). The First BTR Violation set forth the following penalties: (a) $1,000 fine for a first violation; (b) enhanced enforcement in the form of imprisonment not to exceed sixty (60) days or imposition of a fine not to exceed $500.00, or both if the violation continued for a period of thirty days or more. *Id.* ¶ 65. "The [First BTR violation] provides that 'fines and/or violations may be appealed within ten (10) days of receipt of the notice of violation…The June [BTR Violation] does not provide that failure to comply will result in the immediate closing of the package store by the City Code Compliance Officer." *Id.* ¶ 67-68. Plaintiff appealed the December Violation, the First BTR Violation, and the other June violation[11] to the Special Master. *Id.* ¶ 69. Additionally, the First BTR Violation put Plaintiff on notice of its failure to apply for a BTR renewal for Ocean 9, meaning that Ocean 9 had been operating without a valid BTR for almost nine (9) months. *Id.* ¶ 38-39. Once Plaintiff became aware of its failure to timely renew its BTR license, Plaintiff attempted to renew Ocean 9's BTR but was "thwarted by the City from doing so". *Id.*

A hearing on the December Violation, First BTR Violation, and the other June violation was scheduled for August 28, 2017 (the "Hearing"). At the Hearing, the parties advised the Special Master that they had reached an agreement pursuant to which which Plaintiff was to pay a $1,000 fine to resolve all three violations. *Id.* ¶ 70. The Special Master approved the agreement. *Id.* Plaintiff issued a check for the violations that same day but the City could not accept such payment because the Special Master's order had not yet been submitted and entered into the "system". *Id.* ¶ 71. The order's entry into the "system" was necessary for the City to

---

[10]     Exhibit J is illegible and paragraph 63 does not describe the basis of the violation. Accordingly, Plaintiff does not allege for what the other June 25, 2017 violation was issued.

[11]     *See supra* n10.

accept payment, to lift the pending violations against Plaintiff, and ultimately, to allow Plaintiff to tender payment for a BTR license. *Id.*

The Special Master issued his agreed order on September 28, 2017, one month following the Hearing. *Id.* ¶ 72 (*citing* Exhibit L). The order required Plaintiff to pay the fine within thirty days of the entry of the agreed order, to wit, October 28, 2017. *Id.* ¶ 73. "From Thursday, September 28, 2017 through and including Wednesday, October 4, 2017, Plaintiff repeatedly presented payment to the City to comply with the Special Master's order and to obtain its BTR." *Id.* ¶ 74. "[T]he City provided a series of reasons of why payment could not be accepted. For example, the City claimed it could not accept payment because the Special Master's order had not yet been put into the system." *Id.* ¶ 75. Ultimately, the City accepted payment on October 4, 2017, less than four (4) business days following the issuance of the Special Master's order. *Id.* ¶ 76. "The City also accepted late fees relative to the BTR; however it refused to accept payment to renew the BTR." *Id.* ¶ 77.

On October 6, 2017, a Code Compliance officer issued a notice of violation to Plaintiff for failing to obtain a BTR (the "Second BTR Violation"). *Id.* ¶ 81 (*citing* Exhibit O). The Second BTR Violation provided that it was a second offense, and thus carried a fine of $500. *Id.* ¶ 82. Like the First BTR Violation, the October BTR Violation provided for enhanced penalties for continued violation but did not specifically state that failure to comply would result in the immediate closing of the package store by a City Code Compliance Officer. *Id.* ¶ 83. The Second BTR Violation was issued after Plaintiff had paid the fine associated with the First BTR Violation. *Id.* ¶ 86. However, Plaintiff still did not have a valid BTR for Ocean 9.  According to Plaintiff, the Code enforcement officer thereby "coerced Plaintiff's principal, Dorian Doar, by

threat of immediate imprisonment, to close Plaintiff's business due to Plaintiff's alleged[12] failure to obtain a BTR." *Id.* ¶ 87.

Plaintiff complains with respect to the closure of Ocean 9 that "[t]he City did not serve Plaintiff with a written administrative complaint prior to closing Plaintiff's business due to its alleged[13] failure to obtain a BTR. Such written, administrative complaint is required by Section 102-383." *Id.* ¶ 88. Additionally, Plaintiff complains that the City did not set or hold a hearing prior to the closing of Plaintiff's business. *Id.* ¶ 89. As such, Plaintiff asserts it was given no due process for the closure and taking of Ocean 9. *Id.* "Had the City allowed payments as tendered multiple times before October 6, [2017,] no violation could have been issued and Plaintiff would be operating today." *Id.* ¶ 103. Plaintiff was able to pay "the appropriate fines and fees for its [Second] BTR [violation]" on October 11, 2017. *Id.* ¶ 104. However, the City "refuses to issue Plaintiff a BTR now" because Plaintiff no longer has a conforming use pursuant to the October 2016 Ordinance which "prohibit[s] package stores from selling alcohol in the MXE district. The City reasons that since there was no "current" BTR, it cannot renew the BTR because of the conforming use ordinance." *Id.* ¶ 105. Plaintiff asserts that the City "dithered on allowing Plaintiff to renew his BTR for the fiscal year 2016-2017 to get past the date necessary to spring its trap…the City intentionally ambushed Plaintiff as it was the specific target of the City,[14] the Mayor, Commissioner Arriola and certain citizens, including Mitchell Novick". *Id.* ¶ 105-106.

Additionally, before Ocean 9's closure, in approximately August 2017, Plaintiff retained counsel in response to the passage of the ordinances restricting the package sales of alcohol in

---

[12]     Plaintiff did not have a valid BTR license at the time of Ocean 9's closure and was operating Ocean 9 without a valid BTR.

[13]     *See supra* n12.

[14]     Despite Plaintiff's allegation that it was the sole target of Defendant's actions, earlier in the Complaint, Plaintiff asserts the City's actions were targeted at all four (4) of the preexisting package stores in the MXE district. D.E. 1 ¶ 32.  Accordingly, Plaintiff's factual allegations are completely contradictory.

the MXE district. Plaintiff's lawyer arranged meetings with the City Manager, Deputy City Attorney, Commissioner Arriola, who was the sponsor of the subject ordinances, and other commissioners. *Id.* ¶ 95-97. A meeting with Deputy City Attorney, Eve A. Boutsis, was scheduled for Thursday, October 5, 2017, and a call with Commissioner Arriola was scheduled for Friday, October 6, 2017. *Id.* ¶ 98. The meeting with Deputy City Attorney Boutsis occurred and lasted for approximately an hour. *Id.* ¶ 99. The meeting was positive and allowed Plaintiff's counsel to gain further information about the City's concerns. *Id.* Plaintiff's counsel also offered to meet with stakeholders within the City "to discuss how Plaintiff could assist the City in its crime prevention efforts without the passage of the more restrictive hour of operation [sic] which it was argued, were arbitrary, capricious, unreasonable and designed to force the package stores out of business in the MXE district."[15] *Id.* ¶ 99. On October 6th, 2017, "fifteen minutes before the scheduled call with Commissioner Arriola, the Commissioner's office called and abruptly canceled the call without explanation and without making provision for a further meeting." *Id.* ¶ 100. Approximately an hour later, the Plaintiff's principal notified Plaintiff's lawyer regarding the Second BTR Violation and closure of Ocean 9. *Id.* ¶ 101. Plaintiff's attorney "called Deputy City Attorney Boksner on the following Monday. Deputy City Attorney Boksner advised that the City's actions of the past few days were not likely coincidental and a long time coming." *Id.* ¶ 102.

Based on these underlying allegations, Plaintiff brings a Substantive Due Process claim (Count III), a First Amendment claim (Count IV), and three (3) Procedural Due Process claims (Counts I, II, and V) against Defendants, all pursuant to 42 U.S.C. § 1983. Plaintiff also brings two (2) claims against Defendants alleging that they exceeded the authority delegated to them by the State of Florida in passing the earlier discussed ordinances (Counts VI and VII). Defendants

---

[15]     *See supra* n14. Plaintiff's factual allegations are again contradictory.

8

filed the instant Motion to Dismiss on December 6, 2017. In its Response (D.E. 59), Plaintiff voluntarily dismissed Counts VI and VII. As such, the Court only addresses Counts I through V herein. For the reasons set forth below, the Defendants' Motion is GRANTED as to all of the remaining counts.

## LEGAL STANDARD

In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While the Court must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (*citing Twombly*, 550 U.S. at 555).

In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw upon its judicial experience and common sense. *Id.* at 679.

## ANALYSIS

a.  <u>Absolute Immunity for the Individual Defendants as to Counts I, II, III, and V</u>

As an initial matter, Plaintiff's claims against the individually-named Defendants fail as a matter of law because local legislators are entitled to absolute immunity from civil liability for their legislative activities. *Bogan v. Scott-Harris*, 523 U.S. 44, 54-55 (1998) (barring claims against city mayor and council members related to their conduct in introducing, voting for, and signing an ordinance that eliminated plaintiff's office). Plaintiff's allegations against the individual Defendants in this case relate solely to their conduct in considering and passing ordinances restricting the sale of alcohol in the MXE district.[16] Accordingly, the Defendants' actions were "quintessentially legislative". *Id.* at 55. Indeed, by Plaintiff's own admission, "[r]egulation of the sale of alcoholic beverages is a legitimate legislative province". *Id.* ¶ 28. While Plaintiff asserts that the individual Defendants passed the ordinances as a means of targeting Plaintiff or all of the MXE district package stores,[17] the individual Defendants are entitled to absolute immunity in connection with their legislative activity regardless of any purported ill motive or intent. *Bogan*, 523 U.S. at 972-73 ("Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it.") (internal

---

[16]      The City Attorney's office allegedly assisted in the process of passing the ordinances by preparing and revising the drafts. *Id.* ¶ 49. Therefore, the City Attorney's office also has absolute immunity as "officials outside the legislative branch are entitled to immunity when they perform legislative functions." *Bogan*, 522 U.S. at 55 (internal citation omitted). The City Attorneys' actions "were legislative because they were integral in the legislative process." *Id.*

[17]      *See* n14 *supra*. Additionally, with respect to Plaintiff's claim that the individual Defendants were targeting the four (4) package stores, the Complaint is devoid of any allegation that the other package stores, including Plaintiff's other package store, have experienced any negative consequences as a result of the ordinances passed by Defendants. Furthermore, Plaintiff neglects to acknowledge that the ordinances restricting package sale of alcohol also applied to retail stores, convenience stores, and gas stations, thereby negating both of his claims that Defendant was targeting only Ocean 9 and/or all four (4) package stores.

quotation omitted). *See also, Community House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 959 (9th Cir. 2010) ("[T]he question of the intent of the individual defendants is strictly off-limits in the legislative immunity analysis. As instructed by the Supreme Court, our inquiry into whether the officials' actions were legislative must be "stripped of all considerations of intent and motive." (internal citation omitted)).

Citing *Espanola Way Corp. v. Meyerson*, 690 F.2d 827 (11th Cir. 1982), Plaintiff argues that the individual Defendants' conduct was outside the sphere of "legitimate legislative activity" because they engaged in a "conspiracy to close down Plaintiff's store."[18] D.E. 59 at *2. In *Esponla Way*, the plaintiff alleged that at various meetings of the Miami Beach City Commission, the defendants, all of whom were Commissioners, "addressed the problem of the great influx of Cuban refugees." 690 F.2d at 828. Asserting that the Cuban population contained a large criminal element, plaintiff alleged that the Commissioners decided to attack the hotels that housed Cuban immigrants by forming a "task force" of building code inspectors and fire inspectors "to conduct frequent inspections of designated hotels and to write numerous and burdensome violations of these hotels" with the "stated goal" of "driv[ing them] out of business." *Id.* As a result, in excess of three hundred building code violations were issued as well as numerous fire violations. *Id.* After reviewing the allegations, the Eleventh Circuit overturned the District Court's grant of summary judgment to the defendants on the basis of legislative immunity. According to the *Esponla Way* court, in cases finding absolute immunity, the legislative activity usually involves actions such as "the vetoing of an ordinance passed by the city's legislative body" or "the examining of a plaintiff before a legislative committee." *Id.* at 830. However, in *Espanola Way*, "the Commissioners were merely discussing crime and efforts

---

[18]     *See* n14 and n17 *supra*. Plaintiff's *Espanola Way* argument also fails because Plaintiff's contrary factual allegations fail to establish that the individual Defendants conspired to "close down Plaintiff's store."

to reduce it by enforcing building and fire code violations. No act or resolution was contemplated or passed. No vote was taken." *Id* Therefore, without foreclosing the possibility that "a factual development…would disclose that the Commissioners were acting in a legislative role", the *Espanola Way* court found that "the meager facts presented were too equivocal to warrant summary judgment." *Id.*

The facts in the instant matter are completely distinguishable from *Espanola Way*. Plaintiff's factual allegations are that the Defendants discussed, voted on, and passed ordinances limiting package sales of alcohol in the MXE district—conduct that is quintessentially legislative. *Bogan*, 523 U.S. at 55. While Plaintiff may disagree with the ordinances, the individual defendants engaged in conduct that is diametrically opposed to that of the defendants in *Espanola Way*. Plaintiff does not allege that Defendants created a "task force" or anything of the kind. In fact, the Complaint does not contain any factual allegations establishing that the individual Defendants engaged in any conduct other than passing the ordinances at issue. While Plaintiff did receive code violations, the Complaint does not allege that the Code Enforcement Officers who issued those violations were specifically dispatched by the individual Defendants in an effort to close Ocean 9. Further, while Plaintiff claims the individual Defendants were targeting Ocean 9, the ordinances at issue applied to retail stores, gas stations, convenience stores, and other package stores both in the MXE district and city-wide. Plaintiff fails to make out a single allegation that Ocean 9 was the only establishment cited for selling alcohol outside of the permitted time periods or for operating without a valid BTR. Consequently, *Espanola Way* is inapplicable to the instant matter.

The individually-named Defendants are, therefore, entitled to legislative immunity and Plaintiff's substantive and procedural due process claims against them fail as a matter of law.

Accordingly, Counts I, II, III, and V are DISMISSED as to the individual Defendants. However,

even absent the defense of absolute immunity, as explained *infra*, Counts I, II, III, and V fail on

the merits as to all of the Defendants.

b. Count I, II, V: Procedural Due Process Claims

Plaintiff alleges that the City violated its constitutional rights by denying it a BTR and

forcing Ocean 9 to close absent due process of law in violation of 42 U.S.C. § 1983.[19] D.E. 1 ¶

35, 112, 124. The Fourteenth Amendment prohibits states from "depriv[ing] any person of life,

---

[19]      Plaintiff further alleges in Count II that "Defendants have established a custom, policy, pattern and practice
of unlawfully targeting package stores in the MXE district in an unconstitutional and illegal fashion, not reasonably
related to any legitimate result." *Id.* ¶ 122. The City may be held liable under section 1983 for constitutional torts
committed pursuant to an official policy or custom. *Monell v. Dept. of Soc. Serv. of City of New York,* 436 U.S. 658,
690–691, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Under *Monell,* a plaintiff must allege that the
constitutional deprivation at issue was the result of "an official government policy, the actions of an official fairly
deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the
force of law." *See Denno v. School Bd. of Volusia County Fla.,* 218 F.3d 1267, 1276 (11th Cir. 2004) (citations
omitted). The policy requirement is designed to "distinguish acts of the *municipality* from acts of employees of the
municipality, and thereby make clear that municipal liability is limited to action *for which the municipality is
actually responsible.*" *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 n.5 (11th Cir. 2003) (quotation omitted)
(emphasis in original). "To hold the municipality liable, there must be a direct causal link between a municipal
policy or custom and the alleged constitutional deprivation." *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262,
1271 (11th Cir. 2005) (internal citation omitted).

          While Plaintiff fails to allege a cognizable procedural due process claim as explained *infra*, Count II also
fails because the Complaint contains no factual allegations whatsoever of a pattern or series of unlawful practices
that could serve as grounds for imposing liability against Defendants. Instead, Plaintiff simply makes a conclusory
allegation that the Defendants "established a custom, policy, pattern and practice of unlawfully targeting package
stores in the MXE district in an unconstitutional an illegal fashion." D.E. 1 ¶ 122. *Perez v. Metro. Dade Cnty.*, 06-
20341, 2006 WL 4056997, at *2 (S.D. Fla. Apr. 28, 2006) ("[T]he simple mention of a policy and/or custom is not
enough, for a plaintiff must do something more than simply allege that such an official policy exists.") (internal
citations omitted)). Plaintiff's only factual allegations are related to the closure of Ocean 9, which falls markedly
short of establishing the existence of an official policy or widespread custom. *See City of Oklahoma v. Tuttle*, 471
U.S. 808, 823-24 (1985) (plurality) ("Proof of a single incident of unconstitutional activity is not sufficient to
impose liability under *Monell*."); *Reyes v. City of Miami Beach*, No. 07–22680–CIV, 2007 WL 4199606, at *6 (S.D.
Fla. Nov. 26, 2007) (dismissal warranted because "[i]n recounting only their own alleged incident, offering no other
facts to support their claim that the City had an official policy or widespread custom that was directly responsible for
their injuries…Plaintiffs have failed to raise their section 1983 claim against the City above the speculative level");
*Sanchez v. Miami-Dade Cty.*, 2007 WL 1746190 at *3 (S.D. Fla. Mar. 28, 2007) (granting the County's motion to
dismiss because plaintiff presented only conclusory allegations that "the abuse to which the Plaintiff was subjected
was not an isolated incident, and was consistent with the policy, custom, and practice of Miami-Dade County.");
*Cummings v. Palm Beach Cty.*, 642 F. Supp. 248, 250 (S.D. Fla. 1986) (same). Indeed, based on Plaintiff's
Complaint, the three other package liquor stores in the MXE district, including one (1) operated by Plaintiff, are still
open and doing business in the MXE district despite Plaintiff's contention that Defendants had a policy or custom
aimed at closing such stores. Moreover, Plaintiff does not allege that the other three package stores have been
unjustly issued code violations or threatened in any way. Accordingly, Count II does not contain sufficient factual
allegations to support a finding that Plaintiff's alleged constitutional deprivation was the result of a City custom
"that is so settled and permanent that it takes on the force of law." *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th

liberty, or property, without due process of law" and protects "the individual against arbitrary action of government." *Wolff v. McDonnell,* 418 U.S. 539, 558 (1974). In the instant matter, the parties dispute whether Plaintiff has been deprived of a protected property interest. Defendants argue that "Plaintiff's due process claims fail as a matter of law because there is no property right to the renewal of an expired business license or permit." D.E. 50 at *13 (*citing Vars v. Citrin*, 470 F.3d 413, 414-15 (1st Cir. 2006) (business owner had no property interest in expired liquor license); *Lockhart v. Mathew*, 83 F. App'x 498, 500-01 (3d Cir. 2003) ("Natural expiration of the license negates any claim that it is a property interest protected by the due process clause.")). Plaintiff, on the other hand, maintains that the "unlawful closing [of Ocean 9] resulted in the loss of a unique business in a unique location, lost goodwill and lost reputation—all property interests protected by applicable law."[20] D.E. 59 at *6.

However, as in the Court's previous Order (D.E. 58) affirming Magistrate Judge O'Sullivan's Report and Recommendation and denying Plaintiff's Emergency Motion for Injunctive Relief, the Court need not determine whether Plaintiff has asserted a protected property right because Plaintiff has failed to allege constitutionally inadequate process. A procedural due process violation does not exist "'unless and until the State fails to provide due process'" prior to or following the deprivation of a substantive right. *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc), cert. denied, 513 U.S. 1110 (1995) (*quoting Zinermon v. Burch,* 494 U.S. 113, 126 (1990)). "In other words, the state may cure a procedural deprivation by providing a later procedural remedy; only when the state refuses to provide a process sufficient to remedy the

Cir. 2004); *see also, Rosario v. Miami-Dade County*, 490 F. Supp. 2d 1213, 1255 (dismissing section 1983 claim against Miami-Dade County where plaintiff failed to allege facts capable of supporting the finding that the County's actions or omissions with respect to the incident in question were part of a "widespread practice rather than an isolated event.").

[20]      Plaintiff cites *Marrero v. City of Hialeah*, 625 F.2d 499, 514 (5th Cir. 1980) for the proposition that Florida law recognizes business reputation/good will as a protected property interest.

procedural deprivation does a constitutional violation actionable under section 1983 arise." *Id.* *See also Cotton v. Jackson*, 216 F.3d 1328, 1330-31 (11th Cir. 2000) ("It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim."). Thus, to state a cognizable procedural due process claim, Plaintiff must allege (i) the deprivation of a protected-property right; (ii) state action; and (iii) constitutionally inadequate process. *See Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). *See also, Tinney v. Shores*, 77 F.3d 378, 382 (11th Cir. 1996) (per curiam) ("[P]laintiffs failed to state a valid procedural due process claim because they have not alleged that [state] law provided them with an inadequate post-deprivation remedy."). However, the Complaint does not contain a single allegation that the state failed to provide Plaintiff with adequate process. In fact, the Second BTR Violation which resulted in Ocean 9's closure "contained instructions on how to appeal the violation." D.E. 43 at *16. However, Plaintiff chose not to pursue such appellate remedy and instead closed its business and brought suit in federal court. *Id.* Additionally, had the Plaintiff applied for a new BTR and the City had denied such BTR, Plaintiff would have had the opportunity to appeal the City's denial to the state court, "which has the power to review and redress any deficiencies in the City's decisions with respect to the issuance of a BTR."[21] *Id.* (*citing McKinney*, 20 F.3d at 1563) (noting that "even if [the plaintiff] suffered a procedural deprivation…he has not suffered a violation of his procedural due process rights unless and until the State of Florida refuses to make available a means to remedy the deprivation."). Plaintiff cannot rely on its failure to avail itself of available state remedies to claim that the state deprived Plaintiff of procedural due process. *See Cotton*, 216 F. 3d at 1331 (stating that "[i]f adequate state remedies were available

---

[21]     A government entity's discretionary decision whether to award an occupation license is reviewable by Florida Courts. *See, e.g., Air Conditioning Designers, Inc. v. McGeehee*, 252 So. 2d 265 (Fla. Dist. Ct. App. 1971); *Miami Beach v. Mr. Samuel's, Inc.*, 351 So. 2d 719 (Fla. 1977).

but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process.").

Accordingly, Plaintiff has failed to allege facts sufficient to state a cognizable procedural due process claim. Counts I, II, and V, therefore, are DISMISSED WITHOUT LEAVE TO AMEND. Amendment of the aforementioned counts would be futile given that Plaintiff must first attempt to utilize its state remedies before seeking relief from this Court.

### c.   Count III Substantive Due Process Claim

Plaintiff alleges that "the City's suspension of Plaintiff's BTR license under the Code and [the October 2016 Ordinance] deprives Plaintiff of the liberty and/or property interest in retaining such license, conduct sales of alcohol [sic] and/or receive [sic] income from said sales without any hearing or proceedings" D.E. 1 ¶ 127. The substantive component of the Due Process Clause protects those rights that are "fundamental," that is, rights that are "implicit in the concept of ordered liberty." *Palko v. Connecticut,* 302 U.S. 319, 325 (1937). Unlike procedural due process claims, a violation of a plaintiff's substantive due process rights "is complete when it occurs; hence, the availability *vel non* of an adequate post-deprivation state remedy is irrelevant." *McKinney*, 20 F.3d at 1557. The Supreme Court has concluded that most, but not all, of the rights enumerated in the Bill of Rights are fundamental. *Id.* at 1556. Areas in which substantive rights are created only by state law are not subject to substantive due process protection because "substantive due process rights are created only by the Constitution" *Id. quoting Regents of Univ. of Mich. v. Ewing,* 474 U.S. 214, 229 (1985) (Powell, J., concurring). Consequently, "state law based rights constitutionally may be rescinded so long as the elements of procedural—not substantive—due process are observed." *Id.*

In Count III, Plaintiff asserts that it has substantive due process rights in "retaining" its BTR license, in conducting its business via the sale of alcohol, and receiving income from such sales. D.E. 1 ¶ 127. The Court addresses each alleged right in turn.

With respect to Plaintiff's asserted right to "retain" its BTR license, because such licenses are property interests created by state law, they do not receive the protection of substantive due process. *McKinney*, 20 F.3d at 1556. *See also Artistic Entertainment, Inc. v. City of Warner Robins*, 134 Fed.Appx. 306, 309 (11th Cir. 2005) (In this case, [Plaintiff] has shown no more than deprivation of a license, a property interest created by state law, and therefore has failed to establish a substantive due process violation."); *Moates v. Strength,* 57 F.Supp.2d 1305 (M.D. Ala. 1999) (holding that the denial of a business license does not amount to the denial of a fundamental right, and thus, does not qualify as a substantive due process violation); *Ammons v. Okeechobee Cty.*, 710 So. 2d 641, 645 (Fla. 4th DCA 1998) ("An occupational license is merely the privilege, accorded by the state or its subdivisions, to conduct business at a particular location. The denial of such a license does not prevent a business owner from pursuing a lawful occupation; it merely prevents the business from operating at a particular location."). Accordingly, Plaintiff does not have a substantive due process right to "retain" a BTR license issued by the City.

With regards to Plaintiff's assertion that it has a fundamental right to run its business and garner income from doing so, the Supreme Court has specifically ruled that while "[t]he assets of a business (including good will)[22] unquestionably are property…business in the sense of *the activity of doing business*, or *the activity of making a profit* is not property in the ordinary sense".

---

[22]     It is worth noting that Plaintiff does not allege in Count III that the state deprived it of "good will". However, even if Plaintiff made such an assertion, the Complaint does not include any factual allegations to support the claim that Ocean 9 has lost any "good will", let alone that such loss resulted from arbitrary or capricious state action.

D.E. 43 at *13 (*citing Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 672 (1999) (emphasis in original). Accordingly, Plaintiff has failed to assert the violation of a substantive right to run its business and derive income from its operation.

Plaintiff also asserts that the ordinances "limiting the sale of alcoholic beverages by package stores in the MXE district [are] unreasonable and unconstitutional taking [sic] as it deprives Plaintiff of his business and the income from sales of alcoholic beverage without a legitimate and established purpose other than to put package liquor stores out of business." D.E. 1 ¶ 130. While there is generally no substantive due process protection for non-fundamental rights, where a person's state-created rights are infringed by a legislative act, the substantive component of due process generally protects that person from arbitrary and irrational government action. *See Kentner v. City of Sanibel*, 750 F.3d 1274, 1279-80 (11th Cir. 2014). "Substantive due process challenges that do not implicate fundamental rights are reviewed under the 'rational basis' standard." *Id.* at 1280 (*citing Fresenius Med. Care Holdings, Inc. v. Tucker*, 704 F.3d 935, 945 (11th Cir. 2013). Under the rational basis test, governments "are not required to convince the courts of the correctness of their legislative judgments." *Id.* at 1281 (*citing Minesota v. Clover Lead Creamery Co.*, 449 U.S. 456, 464 (1981)). "Rather, those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." *Id.* (citation omitted). The standard is "highly deferential" and courts will "hold legislative acts unconstitutional under a rational basis standard in only the most exceptional of circumstances." *Id.*

In the instant matter, Plaintiff cannot demonstrate that the ordinances restricting package sales of alcohol in the MXE district lacks a rational basis. In fact, the Complaint specifically

states that "the City determined that the consumption of alcoholic beverages in public places disturbs the quiet enjoyment of the community, causes noise, and contributes to litter, noxious odors, and the general degradation of the City" and, therefore, passed the ordinances "to serve the health, safety, and welfare of its residents and visitors" as well as to prevent crime. D.E. 1 ¶ 29, 32. Consequently, by Plaintiff's own admission, the Ordinance is rationally based on the City's desire to protect the health, safety, and welfare of the City's residents and visitors. *See also* Magistrate Judge O'Sullivan's Report and Recommendation, D.E. 43 at *18-19 ("The substantive due process doctrine prevents the government from engaging in conduct that is 'arbitrary or conscience shocking.'..[T]he allegations contained in the Complaint do not rise to this standard."). "While [P]laintiff do[es] not agree with the wisdom or fairness of these rationales, this is simply not the test under a rational basis review."[23] *Kentner*, 750 F.ed at 1280 (*citing Fresnius Med. Care Holdings, Inc.*, 704 F.3d at 945.

Accordingly, Count III of the Complaint is DISMISSED WITHOUT LEAVE TO AMEND. Given the facts of this case and relevant case law, amendment to Count III would be futile.

d.  <u>Count IV: Retaliation for First Amendment Expression</u>

Plaintiff alleges that the City's closure of Ocean 9 the day after Plaintiff's counsel met with the Deputy City Attorney amounts to retaliation for First Amendment expression pursuant to 42 U.S.C. § 1983. To survive a motion to dismiss, a plaintiff who complains of retaliation for the exercise of his First Amendment rights must allege that: (i) his speech or act was constitutionally protected; (ii) the defendant's retaliatory conduct adversely affected the

---

[23]     Additionally, Plaintiff titled Count III as a "Substantive Due Process and Takings Claim" but makes no actual allegations in support of its takings claim. Regardless, to the extent Plaintiff may be attempting to state a substantive due process takings claim in Count III, such a claim fails because it is well settled that "[t]here is no 'substantive due process takings' cause of action. The only substantive due process claim is for arbitrary and capricious conduct." *Villas of Lake Jackson, Ltd. v. Leon Cty.*, 121 F.3d 610, 612-14 (11th Cir. 1997).

protected speech; and (iii) there is a causal connection between the retaliatory actions and the adverse effect on speech. *Abella v. Simon*, 482 F. App'x 522, 523 (11th Cir. 2012) (*quoting Bennett v. Hendrix*, 423 f.3D 1247, 1250 (11th Cir. 2005). "To establish a causal connection, the plaintiff must allege that the protected conduct was the "motivating factor behind the defendants' actions." *Id. citing Smith v. Mosley,* 532 F.3d 1270, 1278 (11th Cir. 2008). Plaintiff alleges that, through its counsel, Plaintiff "met with Deputy City Attorney Boutsis to discuss Plaintiff's concerns regarding the ongoing changes to the hours in which a package store could sell alcohol." D.E. 1 ¶ 137. By Plaintiff's own admission, "[t]he meeting was positive and allowed [Plaintiff's counsel] to gain further information about the City's concerns." *Id.* ¶ 99. However, Plaintiff alleges that the next day, "[i]n response to Plaintiff's speech", a City Code Enforcement Officer ordered the closure of Ocean 9. *Id.* ¶ 140. The only other allegation on which Plaintiff bases his First Amendment claim is Deputy City Attorney Boksner's general statement three days following Ocean 9's closure that "the City's actions of the past few days were not likely coincidental and a long time coming". *Id.* ¶ 102, 141.

As per the Court's Order (D.E. 58) adopting Judge O'Sullivan's Report and Recommendation, Count IV is based on completely "conclusory" allegations that are insufficient to support a section 1983 claim for retaliation based on First Amendment expression. D.E. 43 at *19. Plaintiff's retaliation claim is based solely on the timing of Ocean 9's closure and City Attorney Boksner's general statement that did not in any way reference the meeting or any statements made by Plaintiff's counsel therein. The Complaint does not contain a single factual allegation linking the City Code Enforcement Officer's October 6, 2017 actions to the Defendants, let alone to Plaintiff's speech during the meeting. Indeed, according to City Attorney Boksner's statement, the closure was "a long time coming" and thus, not motivated by the

previous day's meeting or any particular speech elicited therein.[24] Moreover, Plaintiff neglects to acknowledge that on October 6, 2017, Plaintiff was in fact operating Ocean 9 without a valid BTR—unlawful conduct that Plaintiff was cited for approximately three months earlier—well before the meeting even took place. Therefore, even assuming, *arguendo*, that Plaintiff was able to establish the first two prongs of the First Amendment analysis, Plaintiff's claim fails because the Complaint does not contain sufficient factual allegations to establish that Plaintiff's speech during the meeting was the "motivating factor behind" the Code Enforcement Officer's October 6, 2017 issuance of the Second BTR Violation and closure of Ocean 9. *Abella,* F. App'x at 523 (internal citation omitted). Count IV, therefore, is DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND. However, Plaintiff is cautioned that should Plaintiff choose to amend and again fail to allege sufficient facts supporting this claim, it will be dismissed with prejudice.

Accordingly, it is hereby

ORDERED AND ADJUDGED that the Defendants' Motion to Dismiss, D.E. 50, is GRANTED as follows:

(1) Counts I, II, III, and V of the Complaint, D.E. 1, are DISMISSED WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND.

(2) Counts VI and VII of the Complaint, D.E. 1, are DISMISSED WITHOUT PREJUDICE as per Plaintiff's voluntary dismissal.

(3) Count IV of the Complaint, D.E. 1, is DISMISSED WITHOUT PREJDUICE AND WITH LEAVE TO AMEND.

(4) If Plaintiff elects to file an amended complaint as to Count IV, Plaintiff is cautioned that it must allege specific facts supporting its legal theory. Should Plaintiff file an amended complaint as to Count IV, such complaint **shall be filed no later than <u>Wednesday, February 14, 2018</u>**.

---

[24]    Additionally, Plaintiff fails to acknowledge that it was in fact operating Ocean 9 absent a valid BTR license at the time of its closure.

DONE AND ORDERED in Chambers in Miami, Florida, this 5th day of February, 2018.


UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record